**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF WEST VIRGINIA**

**CLINTON HOWARD,**

        **Petitioner,**

**v.**                                        **Civil Action No. 5:12cv34**
                                             **(Judge Bailey)**

**TERRY O'BRIEN,**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I.   Factual and Procedural History

On March 7, 2012, the *pro se* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2241, along with a motion for *in forma pauperis* ("IFP") status, a copy of his Prisoner Trust Account Statement, and his filing fee.[1]

On March 12, 2012, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to respond to the petition. On March 29, 2012, the defendant moved for an extension of time in which to respond; defendant's motion was granted by Order entered March 30, 2012. On May 8, 2012, the respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Because petitioner was proceeding *pro se,* on May 9, 2012, a <u>Roseboro</u>[2] Notice was issued. On June 13, 2012, petitioner filed a "Pro Se Rebuttal/Objection and Memorandum of Law in Support and/or Motion for Cross Summary Judgment to the United States [sic] Motion to Dismiss and Alternative [sic]."

---

[1] On March 12, 2012, petitioner's motion for IFP was denied as moot.

[2] <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

This matter, which is before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, is ripe for review.

## II.  The Pleadings

The petitioner, now an inmate at USP Hazelton in Bruceton Mills, West Virginia, was previously incarcerated at USP Atlanta from April 21, 2008 until November 18, 2012.  In the petition, the petitioner challenges two disciplinary proceedings that occurred while he was at USP Atlanta, one of which resulted in the loss of good conduct credit.

## A.  Petitioner's Disciplinary Proceedings

On July 14, 2010, the petitioner received an incident report in which he was charged with a violation of Prohibited act Codes 203, Threatening; 298, Interfering with Staff; and 312, Insolence Toward a Staff Member.  (Dkt.# 16-2 at 2).  The report stemmed from an incident earlier that day when the petitioner cursed at and threatened Counselor Juel Hawkins, a female staff member who was conducting an inspection of his cell.  Id.  When Hawkins began to remove items from around petitioner's bunk and cell floor, petitioner became verbally abusive, profane, and told her "I should go to the ADX[3] for you Ms. Hawkins, you are going to live to regret this . . . Bitch[,] you need your ass beat down."   Id. To the nearby inmates who witnessed the altercation, petitioner also said "I'm tired of that fucking bitch." Id.  Because the petitioner was threatening a staff member, he was removed from the unit, escorted to the lieutenant's office, and an incident report ensued.  Id.

At the time the petitioner received a copy of the incident report, he was advised of his rights.  Id. at §23-24.  The petitioner stated to the investigating officer that he agreed with the charges as written, and that he did not want to be on the compound because he wanted to avoid

_____

[3] ADX is the Administrative Maximum Facility, located in Florence, Colorado, reserved  to house federal offenders requiring the tightest controls.

contact with Hawkins. Further, he claimed that Hawkins was aggressive and disrespectful by destroying his headphones.[4] Id. at §24.

A Unit Disciplinary Committee Hearing[1] ("UDC") was held on July 15, 2010. Id. at § 21. The petitioner again stated that he agreed with the charges. Id. at §17. Because of the severity of the charges, the charges were referred to a Disciplinary Hearing Officer ("DHO") for further proceedings.[2] Id. at §19. In addition, the UDC recommended that the petitioner be sanctioned to 27 days' loss of good time, 30 days' disciplinary segregation, loss of privileges, and recommended for transfer. Id. at §20.

On July 15, 2010, the petitioner received a Notice of Discipline Hearing Before DHO form. (Dkt.# 16-2 at 6). The petitioner was also advised of his rights. (Id. at 5).

A DHO hearing was held on July 21, 2010. (Dkt.# 16-2 at 8). At the beginning of the hearing, the petitioner was again advised of his rights. Id. at 8, §I(C). Petitioner said that he understood his rights. (Id. at 9, §V). Moreover, when asked for a statement, the petitioner stated "Yes, I stated I should go to the ADX because of you." Id. at 8, §III(B). Based on the petitioner's statement, and the written testimony of Juel Hawkins, the DHO found that the greater weight of the evidence showed that the petitioner committed the prohibited act of

---

[4] In his memorandum of law in support of his petition, petitioner contends that "Ms. Hawkins plotted this to get rid of me . . . her ploy was to intensity [sic] me by tearing the wire out of my headphones in front of me knowing that would provoke me to become enraged." Dkt.# 1-2 at 1.

[1] Pursuant to 28 C.F.R. §§ 541.2 and 541.15, a Unit Disciplinary Committee consists of one or more staff members who hold an initial hearing within 3 working days from the date staff became aware of an incident to determine whether the prohibited act, or a similar one, was committed, not committed, or whether further proceedings are needed.

[2] Pursuant to 28 C.F.R. §§ 541.2, a disciplinary Hearing Officer is an independent hearing officer who conducts disciplinary hearings referred for further action by the UDC and who imposes sanctions if a violation is found.

Threatening.[5]  Id. at 9, §V.  Therefore, the petitioner was sanctioned 27 days loss of good time, 30 days disciplinary segregation, 6 months loss of visiting and phone privileges, and recommended for transfer to another facility.  Id. at 9, § VI.  The DHO reasoned that such sanctions were warranted because inmate threats to staff members threatens the staff's ability to carry out their assigned duties and to effectively deal with all inmates and could lead to more serious incidents. Further, the DHO explained, the sanctions were intended to act as a deterrent to petitioner's decision to commit such offenses in the future.  Because the severity of the offense reflected poor institutional adjustment, the specific sanction of loss of good time was imposed, and petitioner was recommended for transfer to a facility more commensurate to his security needs.  Id. at 9 – 10, §VII.

The petitioner was notified of his right to appeal the DHO's decision, and did so.  Id. at 10, §VIII; Dkt.# 16-3, ¶5 at 3.  Although the petitioner's appeals were mistakenly rejected as untimely; he did in fact exhaust his administrative remedies.  Dkt.# 16-3, ¶5 at 3.

On August 25, 2010, while still in Disciplinary Segregation in the Special Housing Unit ("SHU") for the July 14, 2010 offense, the petitioner received an incident report in which he was charged with a violation of Prohibited act Codes 203, Threatening, and 312, Insolence Towards a Staff Member.  (Dkt.# 16-2 at 12).  The report stemmed from an incident earlier that day when the petitioner cursed at and threatened Counselor Hawkins, the same female staff member, who was attempting to obtain petitioner's cellmate's signature for receipt of legal mail. Id.  When Hawkins was delivering the mail, petitioner rushed to the door and yelled "I got you bitch, I ain't through with you yet you bitch, I'm gonna get you, you bitch." Id.  Because the petitioner was again threatening a staff member, another incident report ensued.  Id.

_____

[5] The DHO found the statement to be threatening "because . . . [i]nmates may be moved from their designated institutions to the ADX if they continue to commit acts of violence within prison, to include harming other inmates and staff members."  Dkt.# 16-2, ¶9 at 3.

At the time the petitioner received a copy of the new incident report, he was advised of his rights.  Id. at §23-24.  The petitioner denied making threats against Hawkins to the investigating officer, stating he had "been doing time too long to put himself in that type of situation," but admitted using profanity against her.  Id. at § 24.

A Unit Disciplinary Committee Hearing[1] ("UDC") was held on August 30, 2010. Id. at §21.  The petitioner again stated that he did not threaten Hawkins but did admit to "cursing her out."  Id. at §17.  Because of the severity of the charges and type of incident report, the charges were referred to a Disciplinary Hearing Officer ("DHO") for further proceedings.[2] Id. at §19. In addition, the UDC recommended that the petitioner be sanctioned to 27 days' loss of good time, 45 days' disciplinary segregation, and loss of all privileges.  Id. at § 20.

On August 30, 2010, the petitioner received a Notice of Discipline Hearing Before DHO form.  (Dkt.# 16-2 at 16).  The petitioner was again advised of his rights.  (Dkt.# 16-2 at 15).

A DHO hearing was held on October 8, 2010.  (Dkt.# 16-2 at 18).  At the beginning of the hearing, the petitioner was again advised of his rights.  Id. at 18, § I(C).  Petitioner said that he understood his rights.  (Dkt.# 16-2 at 19, Section V). Moreover, when asked for a statement, the petitioner stated "I did curse her out calling her all kinds of bitches but I never threatened her."  Id. at 18, §III(B).  Petitioner called another inmate testify as a witness on his behalf, and this witness' testimony was consistent with petitioner's.  Id. at 18, §III(C)(2). Based on the petitioner and his witness' statements, and the written testimony of Counselor Juel Hawkins, the DHO found that the greater weight of the evidence showed that the petitioner committed the

_____

[1] Pursuant to 28 C.F.R. §§ 541.2 and 541.15, a Unit Disciplinary Committee consists of one or more staff members who hold an initial hearing within 3 working days from the date staff became aware of an incident to determine whether the prohibited act, or a similar one, was committed, not committed, or whether further proceedings are needed.

[2] Pursuant to 28 C.F.R. §§ 541.2, a disciplinary Hearing Officer is an independent hearing officer who conducts disciplinary hearings referred for further action by the UDC and who imposes sanctions if a violation is found.

prohibited act of Being Insolent.  Id. at 19, §V.  Therefore, the petitioner was sanctioned with the loss of email and commissary privileges for 90 days. Id. at 19, §VI.  The DHO reasoned that such sanctions were warranted because inmate insolence to staff members undermines staff's authority and discipline, threatens staff's ability to carry out their assigned duties and to effectively deal with all inmates, and could lead to more serious incidents. Further, the DHO explained, the sanctions were intended to deter petitioner's decisions to commit such offenses in the future.  Because petitioner's inappropriate behavior reflected poor institutional adjustment, the specific sanction of loss of privileges was imposed, to correct his misbehavior and deter its recurrence. Id. at 19 – 20, §VII.

The petitioner was notified of his right to appeal the DHO's decision, but did not file any administrative remedies regarding this DHO hearing.  Id. at 20, §VIII; Dkt.# 16-3, ¶6 at 3.

**B.   The Petition**

In the petition, the petitioner asserts that both of the disciplinary reports should be expunged from his record, and his 27 days of good conduct time should be restored, for the following reasons:

1) the Disciplinary Hearing Officer ("DHO") cannot conduct disciplinary hearings and be a prison Lieutenant at the same time;

2) "the Incident Report of Counsel [sic] Juel Hawkins was fabricated and sagaciously calculated," in retaliation for his "litigious behavior" in filing legal complaints and administrative grievances against her on his own behalf and on behalf of others;

3) the Bureau of Prisons erroneously denied the petitioner access to appeal due to Lieutenant/DHO Officer M. Hicks' error;

4) the Disciplinary Officer found him guilty without evidence to support guilt, causing him to lose good time along with other privileges.

**C.   The Government's Response**

In its response, the government asserts that relief should be denied because:

1) the petitioner was afforded all the due process he was entitled to; and

2) the evidence relied upon by the DHO was sufficient to support the DHO's findings.

**D.  Petitioner's Rebuttal/Objection and Motion for Cross Summary Judgment**

The petitioner generally reiterates his claims and attempts to refute the respondent's arguments on the same.  Petitioner contends that because Hicks was a compound Lieutenant who came into personal contact with inmates, and also served as a Disciplinary Hearing Officer, that that therefore proves bias and a violation of his due process.   Moreover, he insists that there was insufficient evidence to prove him guilty of the infraction, and he reiterates his claim that the hearing was unfair and he is entitled to have his good time be returned to him.

## III. <u>Analysis</u>

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system.  <u>See</u> 18 U.S.C. § 4042.  Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States.  § 4042(a)(3) (emphasis added).  Therefore, the BOP has promulgated rules for inmate discipline.  <u>See</u> 28 C.F.R. § 541.10, <u>et</u> <u>seq</u>.

Moreover, prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution").  However, inmates are entitled to some due process protections.  <u>Id</u>.  Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written

explanation of the evidence relied on and reasons for disciplinary action.  Id.  On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel.  Id. at 567, 570.  Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder.  Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985).

In this case, it is undisputed that the petitioner received all of the due process safeguards delineated in Wolff.  The essence of the petitioner's claims are that he was falsely proven to have threatened Counselor Hawkins with physical harm, and whether he should have been charged for a violation of Code 203,  a violation warranting loss of good conduct time.

Regarding petitioner's sufficiency of the evidence claim, petitioner's allegation that Counselor Hawkins deliberately baited him into losing his temper, then fabricated the July 14, 2010 incident report in retaliation against him for filing complaints about her, and that Lieutenant Michael Hicks was biased against him, because he conducted a disciplinary hearing resulting in his being falsely found guilty of violating Code 203 are without merit or support in the record. By his own admissions, the petitioner repeatedly agreed that he made the threat against Hawkins.  (Dkt.#s 16-2 at 2; 16-2 at 3; and 16-2 at 8).  As noted by the DHO, such a situation is a threat to the security of the institution.  Thus, the petitioner was appropriately charged under Code 203.

Likewise, petitioner's claim that Counselor Hawkins' August 25, 2010 incident report was also based on fabricated evidence and that Lieutenant Hicks again conducted a fraudulent DHO hearing on the incident, finding him guilty without evidence, must also fail.  Although petitioner was charged with Threatening Staff with Bodily Harm, Code 203, and Insolence Towards a Staff Member, Code 312, although both petitioner and his witness denied that he had

made any threats toward Hawkins, both admitted that petitioner had in fact cursed at Hawkins, providing a valid basis for a finding by DHO Hicks that petitioner showed insolence toward a staff member. Therefore, although petitioner was not found guilty of a second instance of Threatening Staff with Bodily Harm, he conceded that he was guilty of Insolence, a violation of Code 312.[6]

Because petitioner admitted to the charges of both incident reports, he cannot show that Counselor Hawkins or Lt. Hicks were biased against him, either Hawkins by bringing false charges on fabricated evidence, or Hicks, in finding him guilty without sufficient evidence.

Moreover, because petitioner failed to file any administrative remedy regarding the August 25, 2010 incident report, he has not administratively exhausted that claim and thus cannot seek any relief regarding it here.

Petitioner's claim that the BOP erroneously denied his appeal because of a clerical error must fail as well; the BOP admitted its error and petitioner was never denied the opportunity to seek relief in the Court as a result of the error, and so he cannot show any resultant injury.

Finally, petitioner's claim that Lt. Michael Hicks was unqualified to be his Disciplinary Hearing Officer, because he was uncertified and/or had a conflict of interest, in that he was both a Lieutenant on the compound and his Disciplinary Hearing Officer, and/or that he had an inappropriately friendly relationship with Counselor Hicks, and thus ruled against petitioner out

---

[6] Code 312 is a prohibited act in the high severity category level and carries the same penalty as Code 203, Threatening. See Program Statement ("P.S.") 5270.09, Chapter 1, Pages 9 – 14. Every prisoner who arrives at a federal institution is given Notice of the Inmate Discipline Program promptly upon arrival, including a Summary of the Inmate Discipline System (Appendix B); Inmate Rights and Responsibilities (Appendix C); and Prohibited Acts and Available Sanctions (Table 1). Receipt of these documents must be noted on the intake screening form and maintained in the inmate's central file. The receipt is kept in the inmate's central file. Program Statement 5270.09, ¶7 at page 5. In addition, a violation of either Prohibited Act 312 or 203 carries the same threat to security, and requires the same expenditure of additional resources, which justifies the sanctions actually imposed. Thus, the petitioner could have suffered the same fate regardless of whether he was charged with violating Code 203 or Code 312.

of bias, that claim fails as well. Hicks' Declaration states that he was trained and has been certified as a Disciplinary Hearing Officer since 2003. (Dkt.# 16-1, ¶2 at 2). Hicks denies having an inappropriately friendly relationship with Counselor Hicks, or greeting her with "hugs and kisses" or any other physical displays of affection, as petitioner contends; and denies petitioner's allegations that he was biased against him. (Id., ¶13 at 3 - 4). Moreover, as to petitioner's implied accusation of Hicks' conflict of interest in serving as both a Lieutenant "on the compound" and as petitioner's DHO, there is simply no proof in the record that Hicks was involved in petitioner's underlying proceedings, before being his DHO; Hicks' name does not appear on either Incident Report or UDC finding, only on the Disciplinary Hearing Officer Reports. Due process requires disqualification of a decision maker who was directly or substantially involved in the underlying incident. Neal v. Warden of FCC-Petersburg, Petersburg, Virginia, 2010 U.S. Dist. LEXIS 48780, 20 - 21 (E.D. Va. 2010)(citing Gaither v. Anderson, 236 F.3d 817, 820 (7th Cir. 2000)). Here, there is no question but that Hicks had no involvement in the underlying incident. Moreover, an adjudicator is entitled to a presumption of "honesty and integrity" absent clear and convincing evidence to the contrary. Withrow v. Larkin, 421 U.S. 35, 47 (1975). As Hicks reported in his Declaration, he based his findings on the evidence in front of him, including petitioner's admissions to the offenses, and stated that if he found misconduct that was supported by the greater weight of the evidence, he imposed disciplinary sanctions based on the nature of the offense and in accordance with the provisions of 28 C.F. R. Section 541.17. (Dkt.# 16-2 at 2 – 4). The undersigned finds that there is no merit to petitioner's claim of bias or conflict of interest on the part of Hicks.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be **GRANTED** (Dkt.# 15), the plaintiff's Motion for Cross Summary Judgment against the defendants be **DENIED** (Dkt.# 19), and petitioner's §2241 motion be **DENIED with prejudice** and dismissed from the docket.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by July 5, 2012,** any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge**. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984). The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record electronically.

DATED: June 20, 2012

 /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE